ROSCOE LATTIMORE v. THE STATE.

No. 1464.    Decided March 13, 1912.

1.—Carrying Pistol—Civil Officer—Rural Mail Carrier.

A rural mail carrier is not a civil officer as that term is defined under article 476, Penal Code, but is a mere employee in the postal department of the United States, and, therefore, not authorized to carry on or about his person, a pistol.

2.—Same—Postal Rules—Evidence.

Where, upon trial of unlawfully carrying a pistol, the defendant claimed that under the rules promulgated by the Fourth Assistant Postmaster General for the guidance of rural mail carriers constituted such carrier a civil officer, but no such evidence was introduced on the trial, the same could not be considered on appeal; besides, he was not such civil officer as is contemplated in article 476, Penal Code.

3.—Same—Civil Officer—Ejusdem Generis—Statutes Construed.

The doctrine of ejusdem generis particularly applies to article 476, Penal Code, exempting revenue or other civil officers from prosecution under article 475, and said words do not include a civil officer or other civil officer of the same kind or character, as that would include every employee of the government. Following Ex parte Muckenfuss v. State, 52 Texas Crim Rep., 467, and other cases.

4.—Same—Place of Business.

Where, upon trial of unlawfully carrying a pistol, the defendant claimed that he carried the pistol while engaged in the carrying and distribution of the United States' mail as a rural mail carrier in a vehicle used by him, and that he was, therefore, at his own premises and place of business, such defense was untenable.

5.—Same—Place of Business—Public Roads—Vehicle.

The public roads of the State, or the buggy in which a man rides driving

over them, can not be considered in law his premises or place of business, and such a contention by defendant, who was accused of unlawfully carrying a pistol, and claimed as a defense that he was on his own premises while in his vehicle as a rural mail carrier delivering mail, is untenable. Following Baird v. State, 34 Texas, 600, and other cases.

Appeal from the County Court of Nacogdoches. Tried below before the Hon. F. P. Marshall.

Appeal from a conviction of unlawfully carrying a pistol; penalty a fine of $100.

The opinion states the case.

*King & King,* for appellant.—On the question of place of business: Williams v. State, 44 Texas Crim. Rep., 494.

On the question of civil officer: Love v. State, 32 Texas Crim. Rep., 85.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, Judge.—The appellant was indicted and convicted of unlawfully carrying a pistol and fined $100.

By a statement of the facts, agreed to by both parties, and approved by the court "the following is a true and correct statement of all the material facts proven upon said trial, to wit: (1) The defendant admitted that he had and carried on his person a pistol in Nacogdoches County, on or about the first day of February, 1911, the day charged in the indictment.

State Rests.

"(2) The defendant being sworn, testified, that he was about 21 years of age and resided near the town of Garrison, in Nacognoches County, Texas, where he had been engaged for the past two years, or thereabout, as a rural route mail carrier, for rural route No. 4, leading out from the post office from said town and covering a distance of twenty-three miles, from the time of leaving until the time of returning; that he ordinarily left the post office at Garrison with his mail, traveling in a vehicle drawn by horses, about 8 o'clock in the morning, returning, after having made the circuit, about 4 o'clock in the afternoon; that some two years before February 1, 1911, and on April 24, 1909, he had been appointed by P. V. De Graw, Fourth Assistant Postmaster General, as a rural mail carrier for said route, after having stood the civil service examination prescribed by the laws of Congress, and after having taken his oath of office, and made and filed his bond in the sum of $500, such as was required by the postal laws of the United States, and that he had been acting in such official capacity, and under such bond, for the Federal Government, continually since that time. That his duties, as prescribed by rules of instruction furnished by the postoffice Department, was to maintain an office at the postoffice in the town of

Garrison, from which he would receive the United States mail daily, and carry and deliver the same to the various patrons along his route; that it was his duty to carry and sell stamps, and collect moneys therefor, and to carry and deliver, as well as to receive, registered letters and parcels, and to sell money orders and receive the money therefor for the government, and that he had upon some occasions sold money orders and stamps to the amount of $100 upon the trip; that it was his duty to carry and deliver packages from town to parties upon his route, after having purchased the same in town at their requests, that is, packages of certain weights and kinds, such as was prescribed by the rules of instruction so furnished him by the government; that he was forbidden by the Postoffice Department from engaging in or pursuing any other business or vocation, except that of carrying and delivering the mails, etc., along said route, and at said time was engaged in no other business than that of such rural carrier. That it was his custom and duty to leave his home, then in the town of Garrison, proceed to the postoffice in said town, and there classify and assort his mail, and then proceed, by means of a vehicle drawn by horses, along his route, delivering the mail, selling stamps and money orders and collecting such mail as was deposited in the boxes upon his route, and returning to the town with such moneys as he had collected for stamps and money orders, as well as the ordinary mail gathered by him along said route, and to deliver the same back to the postoffice in the town of Garrison. That upon the morning in question he carried a pistol, then broken, for the purpose of leaving the same at Hilliard's blacksmith shop to be repaired, but that he passed the shop before the same was open, as he went out on his delivery, and as he got out of his buggy the pistol dropped to the ground, when he gathered the same up and replaced it in the buggy, and, after procuring his mail, proceeded upon the route, as it was his duty to do, returning in the afternoon at about the accustomed time, where he would again deliver, and where he did deliver, the mail, when he again dropped the pistol from his person to the ground; that the pistol was loaded and would fire easily, but the ejecting rod was broken so as to prevent the same from being unloaded after having been loaded; that when he dropped the pistol the same was procured by an officer and had been in their possession since; that he had not carried that particular pistol before that date, but that he had frequently upon occasions before, while traveling his route in his buggy, carried another pistol with him. That he had no intention of violating the law, and believed that he had the right in his official capacity to carry the pistol while actually engaged in the discharge of his duties, and that at the times he did have and carry this and other pistols he was engaged in the discharge of his duties as such rural carrier; that he had never disowned the pistol, but had never claimed the same since it had been in the hands of an officer, as he thought the officer had the right to it until the matter was settled."

The articles of the Penal Code, under which this prosecution and

conviction were had, are:   Article 475: "If any person in this State shall carry on or about his person . . . any pistol . . . he shall be punished by fine of not less than one hundred dollars nor more than two hundred dollars, or by confinement in the county jail not less than thirty days nor more than twelve months, or by both such fine and imprisonment."

And article 476: "The preceding article shall not apply to a person in actual service as a militiaman, nor to a peace officer or a policeman, or person summoned to his aid, nor to a revenue or other civil officer engaged in the discharge of official duty, nor to the carrying of arms on one's own premises or place of business. . . ."

The appellant presents by his brief, but two questions which are the only ones we will discuss.   None of the others are of sufficient importance to require further notice.

His contention is, first, "that he was a civil officer in the actual discharge of his duty, such as is contemplated by the exemptions provided in the article of the Code," last above quoted.   Second, "that while engaged in the carrying and distribution of the mail as such carrier in the vehicle used by him that he was at his own premises and place of business."

As to the first contention, we know of no law of this State or of the United States that makes a rural mail carrier an officer, nor have we been cited to any.   We have been unable to find any such law.   No Act of Congress, of which we are aware, has ever created any such office or provided for any such officer.   As a matter of fact, as we understand it, a rural mail carrier, is not an officer but merely an employee in the Postal Department of the United States.

In the brief certain questions of "instructions for the guidance of postmasters and carriers in the conduct of rural delivery service" promulgated by the Fourth Assistant Postmaster General, with the approval of the Postmaster General, are quoted, which it is claimed tend to show, or shows, that a rural mail carrier is an officer.   No such evidence was introduced on the trial of the case even if it had been admissible. We can not and do not take judicial notice thereof.   So that on this question, we hold, first, that there is no legitimate evidence in the record to show that the appellant was a civil officer, nor is there any law making him such.   Second, that even if it be conceded that he was a civil officer, he was clearly not such civil officer as was contemplated in the exceptions of the article of the Code above quoted.   The language of the article specifying such persons who are not embraced in article 475, is:   "Nor to a revenue or other civil officer engaged in the discharge of official duty."   It is clear from this that it is not every civil officer who is exempt, because if it had been so intended by the Legislature, the Legislature would have directly said so, but it is only a "revenue" officer or "other civil officer."   The doctrine of *ejusdem generis* especially and particularly applies in this matter.   The words "a revenue or other civil officer" mean and were intended to mean

only a *revenue* officer, not civil, or other *civil* officer of the same kind or character, which would be in effect other *civil revenue* officer. Ex parte Muckenfuss, 52 Texas Crim. Rep., 467; Ex parte Roquemore, 60 Texas Crim. Rep., 282. Even if appellant could be called an officer at all, certainly he was not a *revenue* officer, civil, military, or naval. Neither could he be called an officer of similar or like kind as a revenue officer. If merely a civil officer was intended to be exempted by this statute, the Legislature would have said so and it would have been unnecessary to have said a "revenue or other" civil officer. If the appellant could in any way be construed to be an officer and was exempt under this statute, then every other civil officer of the government would likewise be exempt, from Governor of the State down to and including every Notary Public, and trustee of every public school in the State. In fact, every officer and his deputy and assistant, except military or naval. And if every employe of the government could be construed to be an officer, then every employee of the government, would likewise be exempt. No such exemption was ever contmplated or intended by the Legislature.

As to appellant's second contention: The Supreme Court of this State, soon after the enactment of the pistol law, as it is commonly denominated, in the case of Baird v. State, 38 Texas, 600, said: "The appellant claims that when 'seen with a pistol he was in the woods where he usually hunted hogs every winter or fall, and that therefore those woods were his place of business, and that he had a right under the statute to carry a pistol in the woods while hunting hogs.' We think the Legislature never intended that so general and extended an interpretation should be placed upon the phrase, 'at his or her own place of business;' for if such be the construction, then every man could very plausibly set up the right to keep and bear arms on every occasion, for he could always claim to be at his own business, whether hunting hogs or cattle, or whether going from one neighbor or town to another; and even he who makes it a business to appropriate other people's property to his own use, might claim the right to bear arms to protect that business. Such was clearly not the legislative intent, nor was it the legislative intent to include in the phrase 'on his or her own premises,' wild and uninclosed timber or prairie lands, wholly detached from an enclosed field or premises. The place of business contemplated by the law evidently has reference to a particular locality, appropriated exclusively to a local business, such as the farm, the store, the shop, or dwelling place, and the business such only as is usually carried on upon the farm, in the store or shop, or other appropriated local place. The woods or prairie, or even the public roads, can in no proper sense be termed any man's place of business, since he has no right to an exclusive appropriation." Titus v. State, 42 Texas, 578; Reynolds v. State, 1 Texas Crim. App., 616; Brannon v. State, 23 Texas Crim. App., 428; Featherston v. State, 35 Texas Crim. Rep., 612.

By no stretch of construction could the public roads of the State or a man in his buggy going along them be either the appellant's premises or his place of business in contemplation of this law.

The judgment will, therefore, be affirmed.

*Affirmed.*