

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1346-09

### ALLEN RAY SHIPP, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### FANNIN COUNTY

PRICE, J., announced the judgment of the Court and delivered an opinion in which KEASLER, HERVEY and COCHRAN, JJ., joined. MEYERS, J., filed a concurring opinion. KELLER, PJ., filed a dissenting opinion in which JOHNSON, J., joined. WOMACK, J., dissented.

## O P I N I O N

The appellant was indicted for the offense of forgery under Section 32.21 of the Texas Penal Code.[1] Because the jury found that the counterfeit writing he passed, a purported store receipt, constituted a "commercial instrument," it convicted him of a state jail felony under

---

[1] *See* TEX. PEN. CODE § 32.21(b) ("A person commits an offense if he forges a writing with intent to defraud or harm another.").

Section 32.21(d).[2]  The Sixth Court of Appeals found the evidence insufficient to support conviction for a state jail felony, however, holding that there was no evidence to show that a store receipt constitutes a "commercial instrument" in contemplation of the statute.[3]  We granted the State Prosecuting Attorney's [SPA] petition for discretionary review in order to address whether the court of appeals has correctly construed the statute.[4]  We will reverse the court of appeals's judgment and reinstate the judgment and sentence of the trial court.[5]

## FACTS AND PROCEDURAL POSTURE

The appellant was originally indicted for passing a "writing," namely "a store receipt that purported to be a valid receipt issued by . . . Wal-Mart . . . to indicate the sale of

---

[2]

*See* TEX. PEN. CODE § 32.21(d) ("An offense under this section is a state jail felony if the writing is or purports to be a will, codicil, deed, deed of trust, mortgage, security instrument, security agreement, credit card, check, authorization to debit an account at a financial institution, or similar sight order for payment of money, contract, release, or other commercial instrument.").

[3]

*Shipp v. State*, 292 S.W.3d 267, 276 (Tex. App.—Texarkana 2009).

[4]

*See* TEX. R. APP. P. 66.3(d) (one of this Court's considerations in deciding whether discretionary review is appropriate is that "a court of appeals . . . appears to have misconstrued a statute").

[5]

The court of appeals expressly declined to reform the judgment to reflect conviction for the Class A misdemeanor offense of forgery of a simple writing because the jury charge did not include an instruction authorizing conviction for that lesser included offense as an alternative. *Shipp v. State*, *supra*.  For this proposition, the court of appeals relied upon our recent opinion in *Haynes v. State*, 273 S.W.3d 183 (Tex. Crim. App. 2008), in which we refused to overrule our earlier opinion in *Collier v. State*, 999 S.W.2d 779 (Tex. Crim. App. 1999). *Id*.  In his second ground for review, the SPA once again urges us to overrule *Collier*.  Given our ultimate disposition of the SPA's first ground for review with respect to the sufficiency of the evidence to support the greater offense, we need not reach this second ground for review.

merchandise."[6]  Prior to trial, the State amended the indictment to replace "writing" with "commercial instrument," thereby exposing the appellant to prosecution for a state jail felony.[7]  Because the indictment also alleged two prior, sequential felony convictions, the appellant was ultimately susceptible to punishment as a second degree felon.[8]

At trial,[9] the evidence, viewed in the light most favorable to the verdict, showed that the appellant attempted to wheel a shopping cart containing a computer and a computer desk out of a Wal-Mart in Bonham.  An employee stopped the appellant to check his store receipt against the items in the cart and discovered a number of discrepancies.  On closer inspection,

---

[6] Thus, it appears that the appellant was originally indicted for what amounts to no more than a Class A misdemeanor offense.  TEX. PEN. CODE § 32.21(c).  It does not appear that the appellant ever challenged the jurisdiction of the district court to preside over the case.  Instead, he opted to wait and challenge the indictment as it was subsequently amended.  *See* note 7, *post*.

[7] In a motion to quash, the appellant challenged the indictment as so amended, claiming that a store receipt does not constitute a "commercial instrument."  The trial court correctly ruled that this is a matter of proof, not a question of the adequacy of the charging instrument, and denied the motion to quash.  *See State v. Rosenbaum*, 910 S.W.2d 934, 948 (Tex. Crim. App. 1995) (op. on State's motion for reh'g) (adopting dissenting opinion on original submission, which had argued that "[a]n indictment must be facially tested by itself under the law, as a pleading; . . . it can not be . . . defeated by evidence presented at pretrial").

[8] TEX. PEN. CODE § 12.42(a)(2).

[9] Trial on this indictment was consolidated with trial on two other indictments accusing the appellant, respectively, of possession of a controlled substance and forgery of a government instrument.  The appellant consolidated his appeal of all three convictions.  The court of appeals disposed of these appeals in three separate opinions.  *See*, respectively, *Shipp v. State*, *supra*; *Shipp v. State*, 292 S.W.3d 251 (Tex. App.—Texarkana 2009); *Shipp v. State*, 292 S.W.3d 262 (Tex. App.—Texarkana 2009).  For a more thorough recitation of the facts, unnecessary to an understanding of the issue addressed by our present opinion, we commend the reader to all three court of appeals opinions below.

the receipt proved to be a forgery. At the close of the State's evidence, the appellant requested a directed verdict, arguing that the store receipt did not amount to a "commercial instrument" in contemplation of Section 32.21(d) of the Penal Code.[10] The trial court denied the request, and the jury found the appellant guilty of forgery of a commercial instrument, found the enhancement counts to be true, and assessed his punishment at twenty years' imprisonment and a fine of $10,000.[11] On appeal, the appellant challenged the sufficiency of the evidence to support his punishment as an enhanced state jail felon. He contended that, because the store receipt was a mere "writing," not a "commercial instrument," he should only have been prosecuted and punished as a misdemeanant under Section 32.21(b), not as an enhanced state jail felon under Section 32.21(d).

The court of appeals agreed. Finding no statutory definition of "commercial instrument," the court of appeals also concluded that it "is not a phrase in common use[.]"[12]

---

[10]
The applicant's trial counsel argued that "commercial instrument" must be construed to mean a negotiable instrument. The trial court rejected this argument, holding that while a negotiable instrument does constitute a commercial instrument, it does not exhaust the class of commercial instruments under Section 32.21(d). The court of appeals likewise declined to adopt the appellant's limited understanding of "commercial instrument," pointing out that many of the "commercial instruments" that are specifically listed in Section 32.21(d) do not constitute negotiable instruments. *Shipp v. State*, *supra*, at 271-72 n.2. This Court has since construed at least the bare term "instrument" to embrace more than just negotiable instruments for purposes of Section 32.21(e) of the Penal Code, in *Ramos v. State*, 303 S.W.3d 302 (Tex. Crim. App. 2009).

[11]
The jury also found him guilty of possession of a controlled substance, imposing a sentence of sixty years, and of forgery of a government instrument, assessing a twenty-five year sentence. The propriety of those convictions is not before us in this petition for discretionary review.

[12]
*Shipp v. State*, *supra*, at 272.

It found little guidance from the paucity of cases—unpublished at that—that have addressed the meaning of the term.[13] In the absence of "any persuasive or controlling caselaw addressing this issue,"[14] the court of appeals resorted to an established canon of statutory construction, the rule of *ejusdem generis*.[15] Applying that rule to construe the phrase "other commercial instruments" in Section 32.21(d), the court of appeals set out a list of definitions of the writings specifically enumerated in the statute, taken from a standard legal dictionary, and observed that each specific type of writing "either grants or cedes a valuable right."[16] Contrasting those specific writings to a store receipt, the court of appeals observed:

> an ordinary receipt simply memorializes a transaction that has previously occurred, a fait accompli, which provides no future benefit. A receipt is a "written acknowledgment that something has been received." [BLACK'S LAW DICTIONARY] at 1296 [8th ed. 2004]. Although the testimony by the State showed many reasons why the fake receipt was faulty and demonstrated that such receipts can be cross-checked for veracity a number of ways, there was no testimony provided here to demonstrate that a receipt issued by this Wal-Mart store is anything more than the memorialization of a past transaction, as opposed to other kinds of things granting or ceding future benefits or rights listed in Section 32.21(d). Although we can conceive of situations in which a receipt might be used by some in more ways than those contained in the

---

[13] *Id*. at 272-73 (citing and discussing *Graham v. State*, No. 14-97-00840-CR, 1999 WL 298274 (Tex. App.—Houston [14th], delivered April 13, 1999, no pet.) (not designated for publication), and *Runnels v. State*, No. 14-03-00657, 2005 WL 6345167 (Tex. App.—Houston [14th], delivered February 15, 2005, pet. ref'd) (mem. op.) (not designated for publication)).

[14] *Id*. at 274.

[15] *Id*.

[16] *Id*. at 274-75.

classic definition of the term, there is no evidence of that adduced in such a regard here.[17]

Thus finding that a store receipt is not of the same kind of "commercial instrument" as those expressly listed in Section 32.21(d), the court of appeals held that it cannot support a conviction for forgery as a state jail felony, and rendered an acquittal.[18]

Along the way, the court of appeals gratuitously opined that a definition of "commercial instrument" that the trial court submitted, without objection, in the jury charge at the guilt phase of trial, was erroneous and egregiously harmful to the appellant. The court of appeals seems to have believed that such a claim of trial error in the jury charge was somehow embedded in the substance of the appellant's legal sufficiency argument.[19] But the

---

[17]

*Id*. at 275.

[18]

*Id*. at 276. *See* note 5, *ante*.

[19]

*See id*. at 272 ("Although the brief does not identify it in so many words, we conclude [the appellant's argument] to be a challenge to the jury charge."); *id*. at 275 ("Since, without saying so, this disagreement with the accuracy of the definition of 'commercial instrument' as employed in the jury charge amounts to an alleged jury charge error, we first determine whether sufficient harm resulted from the error to compel reversal."); *id*. at 276 ("the erroneous instruction made the difference between a guilty verdict and one that would be legally insufficient to support a finding of guilt. Under these circumstances, therefore, egregious harm resulted."). Perhaps the court of appeals believed that it was obligated to address potential jury charge error under *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (opinion on reh'g), as part of its determination of how a hypothetically correct jury charge *would* have defined the term "commercial instrument"—an inquiry that we have said *is* necessary to resolution of any analysis of legal sufficiency. *See Shipp v. State*, *supra*, at 270-71 ("we use a hypothetically-correct jury charge to evaluate . . . the legal . . . sufficiency of the evidence" under *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). But it is not necessary to determine whether the definition actually *given* in a particular jury charge constitutes reversible error under *Almanza* in order to determine the hypothetically correct definition for purposes of a legal sufficiency analysis.

appellant's brief did not raise any issue on appeal, explicitly or implicitly, with respect to trial error in the jury charge. He argued exclusively that the evidence was legally insufficient to support a conviction for forgery of a commercial instrument. The court of appeals had no cause to address jury charge error in the context of resolving a point of error aimed exclusively at legal sufficiency of the evidence, and we will not address it here. We granted the SPA's petition in order to evaluate the court of appeals's application of the rule of *ejusdem generis* to Section 32.21(d).

## *EJUSDEM GENERIS*

*Ejusdem generis* means, literally, "of the same kind."[20] The rule of *ejusdem generis* provides that "[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words."[21] It is one of those canons of statutory construction that may prove useful in determining the plain meaning of statutory language, that plain meaning constituting the best indicator of legislative intent to which we are bound

---

[20] 82 C. J. S. *Statutes* § 438 (2009), at 559.

[21] Norman J. Singer & J. D. Shambie Singer, 2A SUTHERLAND STATUTORY CONSTRUCTION § 47:17 at 357-60 (7th ed. 2007) (citing, *inter alia*, *Perez v. State*, 11 S.W.3d 218, 221 (Tex. Crim. App. 2000) (*ejusdem generis* "holds that in interpreting general words which follow an enumeration of particular or specific things, the meaning of those general words should be confined to things of the same kind")). *See Thomas v. State*, 65 S.W.3d 38, 41 (Tex. Crim. App. 2001) (same); *Lefevers v. State*, 20 S.W.3d 707, 711 (Tex. Crim. App. 2000) (same); *Thomas v. State*, 129 Tex. Crim. 628, 632-33, 91 S.W.2d 716, 718-19 (1935) (same); *Zucarro v. State*, 82 Tex. Crim. 1, 3, 197 S.W. 982, 983 (1917) (same); *Ex parte Roquemore*, 60 Tex. Crim. 282, 285, 131 S.W. 1101, 1103 (1910) (same); *Ex parte Muckenfuss*, 52 Tex. Crim. 467, 469-70, 107 S.W. 1131, 1132 (1908) (same).

to give effect.[22] The rule is best regarded as an aid to construction, however, and not an end

unto itself;[23] it should never be invoked to trump otherwise manifest legislative intent.[24] If,

for example, the specific terms exhaust the class of items enumerated in the statute, it must

be presumed that any generic term that follows must refer to items transcending the class,

since a contrary construction "would contravene the more important rule of construction that

all words are to be given effect."[25] "The indication that the general words have their full and

---

[22] *See Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991) ("if the meaning of the statutory text, when read using the established canons of construction relating to such text, should have been plain to the legislators who voted on it, we ordinarily give effect to that plain meaning.").

[23] *See* 82 C .J. S. *Statutes* § 438, at 562 ("Like other canons of statutory construction, ejusdem generis is simply a helpful guide to legislative intent, not a dispositive one, and it does not require a court to give it unthinking reliance.").

[24] Singer & Singer, *supra* § 47:22, at 392 ("general words are not restricted in meaning to objects of the same kind (ejusdem generis) if there is a clear manifestation of a contrary intent"). *See also* 82 C. J. S. *Statutes* § 438, at 559 (*ejusdem generis* "does not apply if a contrary intent is clearly shown"); *id*. at 562 ("Ejusdem generis is by no means a rule of universal application, and its use is to carry out, not to frustrate, the legislative intent."); *Crum v. State*, 131 Tex. Crim. 631, 634, 101 S.W.2d 270, 272 (1937) (rule "does not control where it clearly appears from the statute as a whole that no such limitation was intended"); *Ex parte Roquemore*, *supra* (*ejusdem generis* applies "unless there be a clear manifestation of a contrary purpose"); *Ex parte Muckenfuss*, *supra*, (same).

[25] Singer & Singer, *supra* § 47:21, at 390-91. *See also id*. at 391-92 ("In order to prevent their rejection as surplusage, the general words take an unrestricted meaning on the ground that the legislature, by the addition of general words to an exhaustive enumeration, must have intended that they have meaning outside the class."); *Crum v. State*, *supra* (rule does not apply "where the specific words embrace all objects of their class, so that the general words must bear a different meaning from the specific words or be meaningless"); *Ex parte Lingenfelter*, 64 Tex. Crim. 30, 44, 142 S.W. 555, 561 (1911) ("The enumeration of particular things is sometimes so complete and exhaustive as to leave nothing that can be called ejusdem generis. If the particular words exhaust the whole genus, the general words must refer to some larger genus. * * * [Under these circumstances], . . . the maxim ejusdem generis must yield to the maxim that every part of a statute should be upheld and

natural meaning, regardless of their connection with a series of specific words, may be found in the context of the statute as a whole, by a consideration of its purpose."[26] Moreover, the scope of the class that is defined by the enumeration is sometimes, itself, ambiguous:

> The problem is to determine what unmentioned particulars are sufficiently like those mentioned to be made subject to the act's provisions by force of the general reference. In most instances there is a wide range of ways in which classes could be defined, any one of which would embrace all of the members in an enumeration. Germaneness to the subject and purpose of the statute, viewed in terms of legislative intent or meaning to others, is the basis for determining which among various semantically correct definitions of the class should be given effect.[27]

Finally, we must keep in mind that the provisions of the Penal Code are not to be strictly construed,[28] and that, in construing Penal Code provisions, we must apply certain provisions of the Code Construction Act.[29] With these considerations in mind, we turn to the court of appeals's application of the rule of *ejesdum generis* in the instant case.

## ANALYSIS

Section 32.21(d) does not plainly provide that forgery of a store receipt constitutes a

---

given its appropriate effect, if possible.").

[26] Singer & Singer, *supra* § 47:22, at 394-96.

[27] *Id*. § 47:18, at 382-83.

[28] Tex. Pen. Code § 1.05(a).

[29] *Id*. § 1.05(b) (Sections 311.011, 311.012, 311.014, 311.015 and 311.021 through 311.032 of Chapter 311 of the Texas Government Code (Code Construction Act) apply to construction of Penal Code).

state jail felony—at least not in the same way that it plainly provides that, *e.g.*, a will and a check and a contract do. Is it plain that the catch-all phrase that follows the specific list of writings in the statute, "other commercial instrument," was intended by the Legislature to include a store receipt? The court of appeals believed that the answer to this question turned on proper application of the rule of *ejusdem generis*, ultimately holding that a store receipt is not of the same class of "commercial instruments" as those "other" commercial instruments expressly enumerated in Section 32.21(d). All of the instruments expressly mentioned in the statute, in the court of appeals's view, "relate to legal rights or relationships: the right to take or cede possession of property rights or to hold another party to or release another party from contractually stated agreements."[30] Because a store receipt merely "memorializes" a past commercial transaction and does not "either grant or cede a present or future benefit or right" in the way that the enumerated commercial instruments do, the court of appeals held, it is not covered under the state jail provision of the statute.[31]

While we do not necessarily disagree with the court of appeals's characterization, it seems to us that the class it purports to identify—writings that "relate to legal rights or relationships"—is so broad as to be largely meaningless for purposes of applying the rule of *ejusdem generis*. The listed writings are of a widely variable nature, serving many different

---

[30] *Shipp v. State*, *supra*, at 275.

[31] *Id.*

purposes. How is a will or a codicil like a check? How is a deed of trust or a mortgage like a credit or debit card? Although they all may be described as having some relation to commerce, that relationship is not in every case a very direct one, and the relationship to commerce is not always very similar from one enumerated example to the next.[32] They are not really of any discernable "kind" at all—at least not sufficiently so as to provide a fixed criteria for circumscribing the otherwise-broad ambit of the general language ("other commercial instruments") that follows, such that we may clearly say what is, or is not, "of the same kind" of commercial instrument as those that are expressly listed in the statute. We conclude that, even after applying the rule of *ejusdem generis*, it remains ambiguous whether the Legislature intended that a store receipt should constitute an "other commercial instrument" in contemplation of Section 32.21(d). Given the ambiguity we perceive in the statutory language, and in order to make sure we do not defeat the legislative purpose, we think it acceptable to consult extra-textual factors.[33]

---

[32] "Commerce" is defined as "[t]he exchange of goods and services[.]" BLACK'S LAW DICTIONARY 304 (9th ed. 2009). But a will, for example, is a "legal expression of an individual's wishes about the disposition of his or her property after death[.]" *Id*. at 1735. In commercial law, "exchange" means "[t]he act of transferring interests, each in consideration for the other." *Id*. at 645. Because, strictly speaking, a will does not effect an "exchange" of property, it does not constitute a "commercial" instrument. Likewise, a "release" (*i.e.*, "[t]he relinquishment or concession of a right, title, or claim[,]" *id*. at 1403) does not necessarily involve an "exchange." And yet, if anything is plain about Section 32.21(d), it is that both a will (and codicil) and a release are regarded as "commercial instruments" for purposes of determining the level of offense for the offense of forgery.

[33] *Boykin v. State*, *supra*, at 785-86.

One extra-textual factor we may consider is legislative history.[34] In discussing Section 32.21(d), as originally enacted in 1973, the Practice Commentary observed: "The middle range of penalties is provided by Subsection (d) for documents of commerce and property transfer."[35] In common legal parlance, "documents" are "[t]he deeds, agreements, title papers, letters, receipts, and other written instruments used to prove a fact."[36] A "document of commerce," then, would seem to embrace a "receipt[ ] . . . used to prove a fact" relating to "the exchange of goods and services[.]"[37] Clearly, a store receipt falls within this definition. Indeed, though a store receipt may amount to no more than the memorialization of a commercial transaction, it seems more like what we might ordinarily regard as a

---

[34]

*See* TEX. GOV'T CODE § 311.023 ("In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the . . . legislative history[.]").

[35]

V.T.C.A. Penal Code § 32.21 (1989), Practice Commentary at 172. The Practice Commentaries derive from the Comments of the State Bar Committee on Revision of the Penal Code that accompanied the 1970 Proposed Penal Code, which comments are "an important source of legislative history." V.T.C.A. Penal Code, Foreward (1974), at XXIV. This is especially so in this case because the forgery statute as enacted in 1973 is materially identical to the version originally proposed in 1970. The list of "commercial instruments" in Section 31.21(d) is the same now as when it was enacted in 1973, except that the phrase, "authorization to debit an account at a financial institution," has been added. *See* Acts 2003, 78th Leg., ch. 1104, § 1, p. 3170, effective Sept. 1, 2003. The "middle range of penalties" has been changed from third degree felony to state jail felony. *See* Acts 1993, 73rd Leg., ch. 900, § 1.1, p. 3644, eff. Sept. 1, 1994.

[36]

BLACK'S, *supra*, at 555. In *Ramos v. State*, *supra*, at 307, we relied upon a similar definition of "document" taken from the OXFORD ENGLISH DICTIONARY—COMPACT EDITION, Vol. I, at 781 (1971): "something written, inscribed, etc., which furnishes evidence or information upon any subject." A store receipt "furnishes evidence" of a retail commercial transaction.

[37]

*Id.*, and at 304.

"commercial" instrument than, for example, a will (or codicil) or a release.

We conclude that the particular "commercial instruments" delineated by Section 32.21(d) are not so distinctly and narrowly drawn as to define a class to which a store receipt plainly does not belong. To invoke the rule of *ejusdem generis* to exclude such a patent example of a "commercial instrument" would serve to defeat rather than effectuate the intent of the Legislature to impose a higher range of penalty for any forgery that involves, as the Practice Commentary characterized it, "documents of commerce." We hold that a store receipt does constitute an "other commercial instrument" for purposes of Section 32.21(d). The court of appeals erred to conclude otherwise.

The court of appeals seemed to concede that, because "a receipt might be used . . . in more ways than those contained in the classic definition of the term," it might constitute an "other commercial instrument" in a given case, but held that "there was no evidence of that adduced in such a regard here."[38] We observe that the record in this case *does* show that a Wal-Mart store receipt's memorialization of a purchase is what allows a purchaser (at least of higher priced items such as a computer), after the purchase that it documents is completed, to exit the store with the merchandise. Moreover, it is common knowledge that a store receipt is often necessary to return merchandise for other goods, for cash, or for store credit. These uses are sufficient to qualify a store receipt as a "document of commerce" within what

---

[38] *Shipp v. State*, *supra*, at 275.

we find to be the broader legislative intent. In any event, because we conclude that a store receipt constitutes an "other commercial instrument" under Section 32.21(d), even by "the classic definition of the term," we need not address the question of the adequacy of the State's proof to show that the store receipt might otherwise have amounted to "another commercial instrument." Given our construction of the statute, we hold that the evidence was sufficient to support conviction of the appellant as an enhanced state jail felon.

## CONCLUSION

The judgment of the court of appeals is, accordingly, reversed and the judgment of the trial court is reinstated.

DELIVERED:        February 2, 2011
PUBLISH