

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-08-00124-CR

_____

ALLEN RAY SHIPP, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 336th Judicial District Court
Fannin County, Texas
Trial Court No. 22670

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

According to Allen Ray Shipp's version of events, he accompanied his wife, Carol, to the Wal-Mart store in Bonham. While there, Carol turned over the shopping cart to him which contained a computer and computer desk, along with what she represented was a receipt for the items. Carol told him that the items had already been checked out and paid for and that he needed to take them to the car. As he exited the store, he was stopped by a Wal-Mart employee, who asked to see a receipt for the items in the shopping cart; the receipt he exhibited to the store employee was not a true receipt at all, but a forgery. Shipp was convicted by a jury of forgery of a commercial instrument.[1] Because we do not find the forged receipt in this situation to fall within the definition of a "commercial instrument," we reverse Shipp's conviction for this charge.

We refer the reader to our opinion in cause number 06-08-00122-CR for a detailed recitation of the facts in this case.

The evidence relative to this charge is not difficult to follow. Carol testified that it had been solely her idea to falsify the Wal-Mart receipt. She maintained that without Shipp's knowledge, she had used his computer and scanner to create the false receipt. Carol told the jury that she had told Shipp that she had already paid for the computer, and "all he had to do was leave with it. He didn't

_____

[1]In a single appeal, Shipp challenges three convictions, obtained in a single trial, for possession of a controlled substance; forgery of a government instrument; and this matter (forgery of a commercial instrument). Please see our opinions in cause numbers 06-08-00122-CR and 06-08-00123-CR regarding the first two convictions.

2

know no different" (i.e., that he was unaware that she had not in fact paid for the computer and desk and that the receipt was phony).

It is worth noting that there were two other receipts (characterized by Carol as being "practice" receipts) introduced into evidence as well as the receipt which Shipp had presented. These two practice receipts were found in the automobile which Shipp had driven to the Wal-Mart store. The State pointed out that these receipts were located above the sun visor on the driver's side of the automobile. The inference which the jury was to draw was that the location of the receipts indicated that they were under the control of Shipp or that he had knowledge of their existence (and, hence, was aware that the "receipt" which he had was a forgery).

**Indictment, Offense**

Shipp was originally indicted under Section 32.21(d) of the Texas Penal Code, which particularizes the offense of forgery as follows:

> An offense under this section is a state jail felony if the writing is or purports to be a will, codicil, deed, deed of trust, mortgage, security instrument, security agreement, credit card, check, authorization to debit an account at a financial institution, or similar sight order for payment of money, contract, release, or other commercial instrument.

TEX. PENAL CODE ANN. § 32.21 (Vernon Supp. 2008). The indictment accused Shipp of passing a "writing," to-wit: "a store receipt that purported to be a valid receipt issued by the Wal-Mart store in Bonham, Texas, to indicate the sale of merchandise." On the morning of trial, the State moved to amend the indictment to change "writing" to "commercial instrument." No objection was lodged

3

by Shipp to this proposed amendment; the trial court granted the State's motion and the indictment was interlined such that "writing" was interlined and the phrase "commercial instrument" was written above it. The trial court's charge, as read to the jury, stated that "'Commercial instrument' means anything reduced to writing which is executed or delivered as evidence of an act or agreement, and said writing relates to or is connected with trade, and traffic, or commerce in general, or is occupied with business and commerce." As a point of interest, the indictment's heading, which listed the offense, states, "OFFENSE: FORGERY *FINANCIAL* INSTRUMENT– ENHANCED." (Emphasis added.) The trial court's judgment also states the offense of which Shipp was convicted was forgery of a financial instrument—not a commercial instrument. Shipp himself, in his appellate brief, sometimes complains of his conviction for forgery of a "financial instrument," but raises no objection to the discrepancy. The term "financial instrument" does not appear in Section 32.21 of the Texas Penal Code.

As part of his attack on the legal sufficiency of the evidence, Shipp asserts, as he did before the trial court, that the Wal-Mart receipt in this case does not qualify as a "commercial instrument" as that term is used in Section 32.21.

**Standard of Review**

In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the

4

essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).

In a factual sufficiency review, we review all the evidence, but do so in a neutral light and determine whether the evidence supporting the verdict is so weak or is so outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly unjust. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006); *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006); *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).

In this analysis, we may use a hypothetically-correct jury charge to evaluate both the legal and factual sufficiency of evidence. *Grotti v. State*, 273 S.W.3d 273 (Tex. Crim. App. 2008). A hypothetically-correct jury charge is one "that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

In looking at the requirements of Section 32.21 of the Texas Penal Code, we see that the proof required under these circumstances would be that Shipp had a writing in his possession which purported to be an "original when no such original existed" and that he intended to pass or utter it with the intent to defraud another. The offense is elevated from a class A misdemeanor to a state-jail

5

felony if the writing falls within those listed; in this case, the State maintains that the writing possessed by Shipp fell within the classification of "other commercial instrument."

Shipp challenges only two elements of the proof here in that he claims that there is factual insufficiency to reveal his intent to defraud and that there is legal insufficiency in the proof that the receipt was a commercial instrument.

**Intent to Defraud?**

The evidence recited here certainly shows that Shipp was attempting to exit the Wal-Mart store with the computer and desk and displayed the receipt to demonstrate that those items had already been paid for. On the one hand, there is testimony about Shipp's nervousness and his general demeanor; on the other hand, there is the testimony of his wife, maintaining that the entire scheme had been her product and that Shipp was an innocent dupe in that scheme. The jury had the opportunity to observe the testimony and weigh the credibility of the witnesses. The Texas Court of Criminal Appeals has recently reiterated the role that the appellate courts play in reviewing the factual sufficiency of the evidence:

> Although a factual sufficiency review authorizes an appellate court, to a very limited degree, to act as a "thirteenth juror," the appellate court must nevertheless give the jury's verdict a great degree of deference. A "high level of skepticism about the jury's verdict" is required before an appellate court may reverse due to factual insufficiency.["] An appellate court may not find the evidence to be factually insufficient merely because there are "reasonably equal competing theories of causation." And a factual sufficiency reversal certainly may not occur when the evidence actually preponderates in favor of conviction.

6

*Steadman v. State*, 280 S.W.3d 242, 246–47 (Tex. Crim. App. 2009) (footnotes omitted). In this case, we do not entertain the high level of skepticism about the jury's verdict which would be necessary before we can say that there is a factual insufficiency here. We determine that the evidence presented here was factually sufficient to sustain the jury's finding.

**Is a Receipt a Commercial Instrument?**

As part of his attack on the legal sufficiency of the evidence, Shipp asserts that the receipt at issue in this case does not qualify as a commercial instrument, as that term is used in the above statute.[2]

As noted above, the trial court provided an instruction in the jury charge which set out a definition of "commercial instrument" as follows: "'Commercial instrument' means anything reduced to writing which is executed or delivered as evidence of an act or agreement, and said writing relates to or is connected with trade, and traffic, or commerce in general, or is occupied with business and commerce." This definition was included in the charge with no objection from Shipp. However, Shipp's appellate brief (without mentioning the above definition) posits that the term "commercial

---

[2]In the absence of a definition of "commercial instrument" in the Texas Penal Code, Shipp invites us to employ the Texas Business and Commerce Code's definitions of "instrument." *See* TEX. BUS. & COM. CODE ANN. §§ 3.104(b), 9.102(a)(47) (Vernon Supp. 2008). These essentially define instrument as a negotiable instrument, although in the distinct contexts of negotiable instruments and secured transactions, respectively. Further, the definitions of instrument as "a negotiable instrument or any other writing that evidences a right to the payment of a monetary obligation" is not necessarily consistent with the other examples of specified writings in Section 32.21 of the Texas Penal Code (see our discussion of *ejusdem generis*, below). Therefore, we decline Shipp's invitation to transplant those definitions into this case.

instrument" means something entirely different from that contained within the instructions contained in the charge.  Although the brief does not identify it in so many words, we conclude this to be a challenge to the jury charge.

When construing statutory provisions, courts should generally give effect to their plain meaning. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).  By construing provisions according to their plain meaning, courts properly effectuate the collective legislative intent behind the enactment. *Id*.  Thus, since the best evidence of the collective legislative intent is the statutory text, rules of statutory construction are utilized to ascertain the meaning of that text. *Id*.  These canons of construction, however, are merely rules of logic used to assist in the interpretation of statutory provisions. *Id*. at 785 n.3.  The duty of the appellate court is to construe this provision according to its "plain" textual meaning without resort to extratextual sources. *See id.* at 785; *Rosenblatt v. City of Houston*, 31 S.W.3d 399, 403 (Tex. App.—Corpus Christi 2000, pet. denied) (statutory rules of construction also apply to construing city ordinances).  We will, however, also resort to extratextual sources to construe this provision if we decide that it is ambiguous or that construing it according to its "plain" textual meaning will lead to "absurd results." *Jordan v. State*, 36 S.W.3d 871, 873 (Tex. Crim. App. 2001).  The cardinal rule is to discern and give effect to the intent of the legislative body that enacted this provision. *See Boykin*, 818 S.W.2d at 785–86; *Rosenblatt*, 31 S.W.3d at 403. "In absence of special definitions, statutory language can be measured by common understanding and practices or construed in the sense generally understood." *Carroll*

8

*v. State*, 911 S.W.2d 210, 220 (Tex. App.—Austin 1995, no pet.) (citing *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. [Panel Op.] 1979)). Statutory words are to be read in context and construed according to the rules of grammar and common usage. TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005). The phrase "commercial instrument" is not defined in Black's Law Dictionary or any Texas Code. Shipp's complaint and our research and analysis concerning it also lead us to conclude that the term "commercial instrument" is not a phrase in common use; accordingly, without a statutory definition of the term and the absence of a common use definition, we find it difficult to absolutely define.

There appear to be two recent, unpublished, Texas cases addressing forgery convictions where a commercial instrument was the alleged forged writing.

In *Graham v. State*, No. 14-97-00840-CR, 1999 WL 298274 (Tex. App.—Houston [14th Dist.] Apr. 13, 1999, pet. denied) (not designated for publication), Graham was convicted of forgery of a commercial instrument. A merchandise credit slip from an Ann Taylor clothing store worth $43.39 had been left in a day planner in a courtesy van driven by Graham. Graham admitted taking the day planner and, after removing the credit slip, discarding the day planner. She then used the credit slip at the Ann Taylor store to purchase jeans. There was testimony that the credit slip was akin to a gift card, and the way an individual uses the slip is substantially similar to a gift card (i.e., the credit slip could be used in the same way as one would use cash or a check, to acquire merchandise). According to a store manager, a merchandise credit for a specific amount can be

9

redeemed at any Ann Taylor store for merchandise in the same fashion as if it were money, a check, or a credit for the specified amount on the merchandise credit slip. The appellate court found the evidence sufficient to support a finding that the credit slip qualified as a commercial instrument. *Id.* at \*18. We recognize that the trial court in that case cobbled together a definition of commercial instrument, which might have fit the circumstances of that case (a definition which appears to have been largely used as instructions in the charge employed in the case under review here). While we do not say that the definition used in *Graham* was not appropriate under the circumstances of that case, we question whether it is not so broad as to disqualify it for universal use.

In *Runnels v. State*, No. 14-03-00657-CR, 2005 Tex. App. LEXIS 1381 (Tex. App.—Houston [14th Dist.] Feb. 15, 2005, pet. ref'd) (mem. op.) (not designated for publication), the court of appeals sustained a conviction of forgery pursuant to Section 32.21(d) when the defendant sold counterfeit football tickets. Runnels attacked the trial court's jurisdiction, claiming that the indictment did not state that Runnels had forged a commercial instrument; ergo, Runnels reasoned, the indictment only charged a misdemeanor, and the district court's jurisdiction was not properly invoked. *See* TEX. PENAL CODE ANN. § 32.21. The indictment charged that Runnels had forged a document that had been duplicated and attached as an exhibit. While observing that the statute does not define "commercial instrument" but with no other analysis of what elements are necessarily contained within a document to constitute it as such a thing, the appellate court determined that the indictment did, indeed, allege a state-jail felony. The inference which can be

10

drawn is that the appellate court concluded that tickets to an event qualified as a commercial instrument.

We find little guidance in either of the opinions mentioned above to aid us in determining what constitutes a commercial instrument. The credit slip mentioned in *Graham* is substantially different from the receipt in this case. In *Graham*, the credit slip was "as good as money" (i.e., it could be spent by the bearer to apply to the purchase of anything in that store). In *Runnels*, the football tickets, such as they were, at least purported to offer a value to the holder because (if real) they permitted the bearer to gain admittance to the stadium and be entitled to sit in a designated seat. Here, an authentic receipt would serve only as evidence of a transaction which had already been concluded and not something which promised future benefits. Once the transaction was concluded, the receipt held no further future value. There was no evidence presented at trial that such a receipt would be valuable for future use (i.e., it could be redeemed for money) if it was returned with the merchandise supposedly purchased for an exchange.[3]

*Ejusdem Generis*

Without an explicit statutory definition of the term "commercial instrument" or any persuasive or controlling caselaw addressing this issue, we turn to one of the traditional doctrines of statutory construction, the doctrine of *ejusdem generis*: when words of a general nature are used

___

[3]*Cf. State v. LaPointe*, 345 So.2d 362, 364 (Fla. Dist. Ct. App. 1977), finding forged football tickets qualified as "receipt for money" under Florida forgery statute, which is substantially more broad and inclusive than Section 32.21(d) of the Texas Penal Code.

in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation. *Hilco Elec. Co-op, Inc. v. Midlothian Butane Gas Co.*, 111 S.W.3d 75, 81 (Tex. 2003) (citing *Carr v. Rogers*, 383 S.W.2d 383, 387 (Tex. 1964)); *see also Hall St. Assocs., L.L.C. v. Mattel, Inc.*, __ U.S. __, 128 S. Ct. 1396, 1404, 170 L.Ed.2d 254, 264 (2008) ("[T]he old rule of *ejusdem generis* has an implicit lesson to teach here. Under that rule, when a statute sets out a series of specific items ending with a general term, that general term is confined to covering subjects comparable to the specifics it follows.").[4]

In applying the doctrine of *ejusdem generis*, we look at the specific items listed in Section 32.21(d) before the general term "other commercial instrument," those being "will, codicil, deed, deed of trust, mortgage, security instrument, security agreement, credit card, check, authorization to debit an account at a financial institution, or similar sight order for payment of money, contract, release, or other commercial instrument."

We make the following observations:

- A will is a "document by which a person directs his or her estate to be distributed upon death." BLACK'S LAW DICTIONARY 1628 (8th ed. 2004).

- A codicil is a "supplement or addition to a will, not necessarily disposing of the entire estate but modifying, explaining, or otherwise qualifying the will in some way." *Id.* at 275.

---

[4]"For example, in the phrase *horses, cattle, sheep, pigs, goats, or any other farm animal*, the general language *or any other farm animal*—despite its seeming breadth—would probably be held to include only four-legged, hoofed mammals typically found on farms, and thus would exclude chickens." BLACK'S LAW DICTIONARY 556 (8th ed. 2004).

- A deed is "[a] written instrument by which land is conveyed," or "[a]t common law, any written instrument that is signed, sealed, and delivered and that conveys some interest in property." *Id*. at 444.

- A deed of trust is "[a] deed conveying title to real property to a trustee as security until the grantor repays a loan." *Id.* at 445.

- A mortgage is "[a] conveyance of title to property that is given as security for the payment of a debt or the performance of a duty and that will become void upon payment or performance according to the stipulated terms." *Id.* at 1031.

- "Security instrument" is not defined in Black's.

- A security agreement is "[a]n agreement that creates or provides for an interest in specified real or personal property to guarantee the performance of an obligation." *Id.* at 1387.

- A credit card is "[a]n identification card used to obtain items on credit, usu. on a revolving basis." *Id.* at 396.

- A check is "(i) a draft, other than a documentary draft, payable on demand and drawn on a bank or (ii) a cashier's check or teller's check." TEX. BUS. & COM. CODE ANN. § 3-104(f)(i)-(ii); or a "draft signed by the maker or drawer, drawn on a bank, payable on demand, and unlimited in negotiability." *Id.* at 252.

- A contract is "[a]n agreement between two or more parties creating obligations that are enforceable or otherwise recognizable at law." *Id.* at 341.

- A release is a "[l]iberation from an obligation, duty, or demand; the act of giving up a right or claim to the person against whom it could have been enforced," or "[t]he relinquishment or concession of a right, title, or claim." *Id.* at 1315.

Observing that it could be construed as pedantic in listing the above definitions, this is done to determine whether the receipt in Shipp's case can be said to fit within the statute's final, general term, "other commercial instruments." We find that the enumerated examples in Section 32.21(d) all relate to legal rights or relationships: the right to take or cede possession of property or property

13

rights or to hold another party to or release another party from contractually stated agreements. Checks and credit cards operate in lieu of cash to allow financial transactions. Each of the items listed in Section 32.21(d) before the catchall "other commercial instruments" either grants or cedes a valuable right. Therefore, we determine that such "other commercial instruments" are documents in writing which either grant or cede a present or future benefit or right in the same or similar fashion as those enumerated in Section 32.21(d).

In contrast, an ordinary receipt simply memorializes a transaction that has previously occurred, a fait accompli, which provides no future benefit. A receipt is a "written acknowledgment that something has been received." *Id.* at 1296. Although the testimony provided by the State showed many reasons why the fake receipt was faulty and demonstrated that such receipts can be cross-checked for veracity a number of ways, there was no testimony provided here to demonstrate that a receipt issued by this Wal-Mart store is anything more than the memorialization of a past transaction, as opposed to the other kinds of things granting or ceding future benefits or rights listed in Section 32.21(d). Although we can conceive of situations in which a receipt might be used by some in more ways than those contained in the classic definition of the term, there was no evidence of that adduced in such a regard here. We determine that under the circumstances in this case, the definition of "commercial instrument" as contained in the jury charge was erroneous.

Since, without saying so, this disagreement with the accuracy of the definition of "commercial instrument" as employed in the jury charge amounts to an alleged jury charge error, we

14

first determine whether sufficient harm resulted from the error to compel reversal. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). When error occurs in failing to properly instruct the jury, our review of the charge is under the *Almanza* standard. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). Under *Almanza*, the standard of review for errors in the jury charge depends on whether the defendant properly objected. *Id.*; *see Mann v. State*, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998); *Gornick v. State*, 947 S.W.2d 678, 680 (Tex. App.—Texarkana 1997, no pet.). If a proper objection was raised, reversal is required if the error is "calculated to injure the rights of the defendant." *Almanza*, 686 S.W.2d at 171. In other words, an error that has been properly preserved is reversible unless it is harmless. *Id.* If a defendant does not object to the charge, reversal is required only if the harm is so egregious that the defendant has not had a fair and impartial trial. *Rudd v. State*, 921 S.W.2d 370, 373 (Tex. App.—Texarkana 1996, pet. ref'd).

Under the instruction contained in the jury charge, the receipt itself would fall easily within the definition of a "commercial instrument." But in testing this evidence by comparing it to a hypothetically-correct jury charge (which would include an instruction having a correct definition of "other commercial instrument" as we have suggested), the evidence is insufficient to support the verdict of the jury because there was no evidence that the receipt either granted or ceded any present or future right or benefit. As a consequence, the erroneous instruction made the difference between a guilty verdict and one that would be legally insufficient to support a finding of guilt. Under these circumstances, therefore, egregious harm resulted.

15

Accordingly, the evidence was legally insufficient to support a conviction for forgery of a commercial instrument. Because the jury was not charged on the lesser offense of forgery, we need not decide whether there was sufficient evidence to support a conviction on that offense. *See Thorpe v. State*, 831 S.W.2d 548, 552 (Tex. App.—Austin 1992, no pet.).

> [A] court of appeals may reform a judgment of conviction to reflect conviction of a lesser included offense only if (1) the court finds that the evidence is insufficient to support conviction of the charged offense but sufficient to support conviction of the lesser included offense and (2) either the jury was instructed on the lesser included offense (at the request of a party or by the trial court *sua sponte*) or one of the parties asked for but was denied such an instruction.

*Haynes v. State*, 273 S.W.3d 183, 185 (Tex. Crim. App. 2008).

We reverse the judgment as to Shipp's conviction and render an acquittal in this cause number.

Bailey C. Moseley
Justice

Date Submitted:     April 27, 2009
Date Decided:      July 23, 2009

Publish