

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1346-09

**ALLEN RAY SHIPP, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### FANNIN COUNTY

**MEYERS, J.,** filed a concurring opinion.

### CONCURRING OPINION

I agree with the plurality that the evidence is legally sufficient to support the jury's

verdict that the receipt was a "commercial instrument" under Section 32.21(d) of the

Texas Penal Code. However, I disagree with the path taken to reach that result. A plain

meaning for "commercial instrument" exists, so the plurality should not have looked

beyond the statutory language to consider legislative history.

Section 32.21(d) provides a list of many types of instruments, all of which are

writings that provide for a right, privilege, value, or identification in property. At the end of this list is the phrase "or other commercial instrument." TEX. PENAL CODE ANN. § 32.21(d). The placement of the phrase and use of the word "other" indicates that the list is not exclusive and the list extends to other unnamed items in the class of writings termed "commercial instruments." The Penal Code does not define the phrase "commercial instrument," so its meaning must be determined based on principles of statutory construction.

When a statutory term is not defined, we attempt to give effect to its plain meaning or common understanding. *Ramos,* 303 S.W.3d at 307; *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). The term is generally construed in context as the rules of grammar and common usage allow and utilizing the rules of statutory construction, unless it has acquired a technical or specialized meaning. TEX. GOV'T CODE ANN. § 311.011; *Boykin*, 818 S.W.2d at 785 n.3. One canon of statutory construction that aids us in determining plain meaning is the doctrine of *ejusdem generis*, which the court of appeals employed: "in interpreting general words which follow an enumeration of particular or specific things, the meaning of those general words should be confined to things of the same kind." *Perez v. State*, 11 S.W.3d 218, 221 (Tex. Crim. App. 2000) (en banc); *see Shipp v. State*, 292 S.W.3d 267, 274-75 (Tex. App.—Texarkana 2009). Only when the term is ambiguous or the plain meaning leads to an absurd result do we look to extratextual factors, including legislative history, to ascertain the meaning. *Boykin*, 818

S.W.2d at 785-86.

When construing "commercial instrument," the court of appeals did not have the benefit of our decision in *Ramos v. State*, in which this Court defined the common usage of the term "instrument" as it is used in a different section of the same felony forgery statute. *Ramos*, 303 S.W.3d at 307-08. That case is useful to my present analysis.

The appellant in *Ramos* was convicted under Section 32.21(e)(3)[1] of felony forgery of a government instrument after selling a forged Social Security card to an undercover officer. In determining whether the Social Security card was indeed an "instrument," we first rejected the argument that the technical meaning of "instrument" was "negotiable instrument" as found in the Texas Business and Commerce Code. That code is "by and large, unrelated" to the Penal Code, and since the other items listed in Section 32.21(e) are not limited to negotiable documents, we determined "that the Legislature intended to punish as a third-degree felony the forgery of any 'instrument' issued by government, regardless of whether that 'instrument' was negotiable." *Id.* at 307. We then concluded that "instrument" was a term in common usage and, relying on the Oxford English Dictionary, defined it as "a formal legal document whereby a right is created or confirmed, or a fact recorded; a formal writing of any kind, as an agreement, deed, charter, or record drawn up and executed in technical form, so as to be of legal validity."

---

[1] "An offense under this section is a felony of the third degree if the writing is or purports to be . . . (3) other instruments issued by a state or national government or by a subdivision of either, or part of an issue of stock, bonds, or other instruments representing interests in or claims against another person." TEX. PENAL CODE ANN. § 32.21(e).

*Id.* This was broad enough to include a Social Security card.

The term central to this case is "commercial instrument," rather than "instrument," but I do not believe the adjective "commercial" transforms the meaning of "instrument."[2] Although "instrument" as construed in *Ramos* is located in a different subsection than "commercial instrument," it is logical to assume that the Legislature would have intended the term to have the same meaning within the same subchapter of the Penal Code.[3] If the Legislature intended "instrument" to convey one meaning in Section 32.21(d) and another in Section 32.21(e), it would have used two different words to distinguish meanings.

Instead of transforming the meaning of "instrument," "commercial" narrows it to those instruments used in commerce, and the modifier's significance is also determined according to a plain meaning analysis. The Oxford English Dictionary defines "commerce" as "to carry on trade." 1 OXFORD ENGLISH DICTIONARY 678 (compact ed. 1971). Similarly, Black's Law Dictionary identifies "commerce" as "[t]he exchange of goods and services," and several terms modified by the adjective "commercial" are

---

[2] Like the court of appeals, I do not apply the Texas Business and Commerce Code's definition of "instrument," "a negotiable instrument," to Section 32.21(d). *See Shipp v. State*, 292 S.W.3d 267, 271 n.2 (Tex. App.—Texarkana 2009). This is also consistent with our discussion in *Ramos*. *Ramos*, 303 S.W.3d at 307.

[3] Applying the *Ramos* definition to Section 32.21(d) is consistent with the approach of the Model Penal Code, which contains a similar felony forgery statute: "Forgery is a felony of the third degree if the writing is or purports to be a will, deed, contract, release, commercial instrument, or *other document evidencing, creating, transferring, altering, terminating, or otherwise affecting legal relations*." MODEL PENAL CODE § 224.1(2) (Proposed Official Draft 1962) (emphasis added).

defined as relating to the sale or exchange of goods. BLACK'S LAW DICTIONARY 214-15 (abr. 7th ed. 2000). Accordingly, "commercial" limits the instruments referred to in Section 32.21(d) to those involved in the buying, selling, or transfer of goods, services, or other benefit.

This definition is supported by Section 32.21(d) itself. The general catch-all at the end of the precise list reads "or other commercial instrument." The "other" is of particular significance because it presumes that the specific items listed previously are types of "commercial instruments," and thus, they should all fall within the phrase's definition. Indeed, each item can be classified within my definition.

The dissent would define "other commercial instrument" as documents that create or discharge an economic obligation or that transfer property, but that definition is too narrow. The specific items listed in Section 32.21(d) can reach beyond the scope of the dissent's characterization. For example, wills and codicils need not be limited to economic obligations or property transfers. They often cover other issues such as the custody of a child, the guardianship of elders, and medical directives.

The receipt here fits within the definition of instrument provided for in *Ramos* ("a formal legal document whereby a right is created or confirmed") as modified by "commercial." More than a mere "memorialization of a past transaction" without any future benefit as the court of appeals suggests, the receipt evidences a contract for the sale

of goods, a legal relationship between the buyer and seller.[4]  It is a record of a commercial transaction that confirms the right to possess the items purchased (including the ability to transport them).[5]  Consequently, I disagree with the court of appeals.  Under the facts of this case and given the determination by the jury, it is reasonable to characterize the receipt as a "commercial instrument" under Section 32.21(d).

My conclusion is supported by *Runnels v. State*, No. 14-03-00657-CR, 2005 Tex. App. LEXIS 1381 (Tex. App.—Houston [14th Dist.] Feb. 15, 2005, pet. ref'd) (mem. op., not designated for publication) and *Graham v. State*, No. 14-97-00840-CR, 1999 Tex. App. LEXIS 3564 (Tex. App.—Houston [14th Dist.] May 13, 1999, pet. ref'd) (not designated for publication), which I consider to be more pertinent to this analysis than did the court of appeals.  The court of appeals distinguished the football tickets in *Runnels* from the receipt because the football tickets, unlike the receipt, had value in that "they permitted the bearer to gain admittance to the stadium and be entitled to sit in a designated seat."  *Shipp*, 292 S.W.3d at 273.  Actually, the receipt serves a similar

---

[4]*See Commonwealth v. Sneddon*, 738 A.2d 1026, 1028 (Pa. Super. Ct. 1999) (stating that "a cash register receipt is a 'document evidencing . . . or otherwise affecting legal relations' . . . . To alter a cash receipt is to alter the legal relationship between a buyer and seller.").

[5]The court of appeals stated that "there was no testimony provided here to demonstrate that a receipt issued by this Wal-Mart store is anything more than the memorialization of a past transaction, as opposed to the other kinds of things granting or ceding future benefits or rights listed in Section 32.21(d)."  *Shipp*, 292 S.W.3d at 275.  I disagree because the record supports that the receipt grants the future benefit of allowing the customer to leave the Wal-Mart store with the merchandise.  Also, as the plurality acknowledges, while the possibility of returning merchandise for cash or credit was not raised at trial, it is common for stores to have return policies that allow merchandise to be exchanged or refunded with a receipt.

function to the football tickets because, if authentic, it would have given Appellant the right to possess the items and, thus, entitled him to leave the store with the merchandise. Similarly, I do not see the credit slip in *Graham* as completely distinguishable from the receipt. Although the receipt may not be "as good as money" because it cannot be exchanged for reimbursement without the merchandise also being returned, both the credit slip and the receipt, if authentic, evidence a commercial relationship between the buyer and seller that continues to have significance and is honored upon the document's presentation.

Accordingly, because the term "commercial instrument" is not ambiguous and its plain meaning does not lead to absurd results, it is unnecessary to consult the statute's legislative history or other extratextual sources. The plurality was incorrect for doing so.[6]

I also believe that the plurality opinion is deficient for not addressing the portion of the court of appeals's opinion referring to the jury charge. Even if, as the plurality suggests, the court of appeals "gratuitously opined" about the definition of "commercial instrument" provided by the trial court in the charge, the plurality opinion should have addressed that portion of the lower court's opinion. I hope that my discussion of such is instructive to appellate courts in the future.

In assessing jury charge errors, we first must determine whether error exists. If error is present, we then evaluate whether the error caused harm. *Hutch v. State*, 922

---

[6]Since the lead opinion is a plurality, I am not sure that a majority of this court agrees that it was necessary to look to legislative history in this case.

S.W.2d 166, 170-71 (Tex. Crim. App. 1996) (citing *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g)). The standard of review for errors in the jury charge depends upon whether the error was preserved. Error preserved by objection will require reversal if there is any harm, but if not preserved, egregious harm is required. *Id.* at 171. I disagree with the court of appeals's holding that the jury charge was erroneous.

A proper jury charge guides the jury in answering the questions presented. *Id.* at 170. This requires the charge to define any legal term or phrase that the jury needs to properly resolve the issues. No special instructions are necessarily required for terms or phrases that have neither been statutorily defined nor acquired a technical meaning. *Medford v. State*, 13 S.W.3d 769, 772 (Tex. Crim. App. 2000). But simply because a trial court is not required to give an instruction regarding a term, that does not mean the court errs by doing so. *Lockhart v. State*, 1 S.W.2d 894, 895 (Tex. Crim. App. 1927) ("In our opinion it is not necessary to give any definition of the terms used in the statute, but, one having been attempted, we think it not erroneous.").[7] The trial court has broad discretion in submitting proper definitions and explanatory phrases to aid the jury. *Macias v. State*, 959 S.W.2d 332, 336 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd). Nonetheless, because the jury is the ultimate trier of fact, the charge may not advise the jury on the

---

[7]This is distinguishable from the situation in which the trial court does not define a term in the jury charge: "It is not error, in a prosecution for violating a statute, to refuse to define a word used in the statute, when such word is used in its ordinary sense, and it is easily comprehended by everyone." *Russell v. State*, 665 S.W.2d 771, 780 (Tex. Crim. App. 1983); *see Sanders v. State*, 605 S.W.2d 612, 615 (Tex. Crim. App. 1980); *Hogan v. State*, 496 S.W.2d 594, 599 (Tex. Crim. App. 1973).

specific application of the facts to the law such that it comments on the weight of the evidence. *Watts v. State*, 99 S.W.3d 604, 609-13 (Tex. Crim. App. 2003).

Because "commercial instrument" has neither a statutory definition nor a technical meaning, the trial court had broad discretion when defining the term in the jury charge. The jury charge in this case defined "commercial instrument" as "anything reduced to writing which is executed or delivered as evidence of an act or agreement, and said writing relates to or is connected with trade, and traffic, or commerce in general, or is occupied with business and commerce." *Shipp*, 292 S.W.3d at 270. While the definition is broad, it comports with the plain meaning discussed previously. In addition, the charge is neutral; that is, it does not indicate how the facts should be applied to the phrase defined, and thus, it does not comprise a comment on the weight of the evidence.

Therefore, even though the trial court was not obligated to give a definition of "commercial instrument," it did not abuse its discretion in presenting this definition in its charge to the jury. Nor was the definition inaccurate, misleading, or a comment on the weight of the evidence. I also find that the jury's determination of guilt under Section 32.21(d) is reasonable, given the facts of this case and the definition of "commercial instrument" provided in the court's charge. I neither claim this to be the proper definition of "commercial instrument" nor encourage courts to use this definition in the future, but in this particular case, it did not result in trial error.

For these reasons, I respectfully concur.

Filed: February 2, 2011

Publish