

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1346-09

**ALLEN RAY SHIPP, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### FANNIN COUNTY

**KELLER, P.J., filed a dissenting opinion in which JOHNSON, J., joined.**

The evidence in this case shows that appellant committed a forgery when he passed a fabricated store receipt. Whether that forgery was a misdemeanor or a state jail felony depends upon whether it was forgery of a "commercial instrument."  I agree with the court of appeals that a store receipt is not a "commercial instrument."[1]  Consequently, I would address whether we should overrule *Collier v. State*[2] and reform the judgment to a conviction for misdemeanor forgery.

Whether a store receipt is a commercial instrument is a question of statutory construction.

---

[1] *Shipp v. State*, 292 S.W.3d 267 (Tex. App.– Texarkana 2009).

[2] 999 S.W.2d 779 (Tex. Crim. App. 1999).

In construing a statute, we give effect to the meaning of the literal text, so long as the text is "clear and unambiguous."[3]  If the statutory language is ambiguous, or leads to absurd results that the Legislature could not possibly have intended, then we may consult extra-textual sources of information.[4]  When conducting an inquiry into the plain meaning of the literal text, we are guided by established canons of construction.[5]

One of the canons of construction—employed by the court of appeals in this case—is the doctrine of *ejusdem generis*, which provides: "when interpreting general words that follow an enumeration of particular or specific things, the meaning of those general words should be confined to things of the same kind."[6]  The doctrine "gives effect to both the particular and the general words, by treating the particular words as indicating the class, and the general words as extending the provisions of the statute to everything embraced in that class, though not specifically named by the particular words."[7]  We have applied that doctrine when particular terms are followed by a catch-all phrase introduced by the word "other."[8]

Subsection (d) of the forgery statute provides that forgery is a state jail felony if the forged writing is, or purports to be, one of the following types of documents: "a will, codicil, deed, deed of

---

[3] *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

[4] *Id.*

[5] *Id.*

[6] *Thomas v. State*, 65 S.W.3d 38, 41 (Tex. Crim. App. 2001).

[7] *Id.* at 42 (quoting *Lefevers v. State*, 20 S.W.3d 707, 711-12 (Tex. Crim. App. 2000)) (internal quotes omitted).

[8] *Id.* (construing the phrase "or other evidence of indebtedness").

trust, mortgage, security instrument, security agreement, credit card, check, authorization to debit an account at a financial institution, or similar sight order for payment of money, contract, release, or *other commercial instrument*."[9] Because subsection (d) enumerates particular terms that are followed by the catch-all phrase "or other commercial instrument," an *ejusdem generis* analysis is appropriate. Applying an *ejusdem generis* analysis leads to the conclusion that the particular terms are all examples of documents that create or discharge an economic obligation or that transfer property. Thus, the phrase "or other commercial instrument" must also refer to a document that creates or discharges an economic obligation or that transfers property.

A store receipt does not create or discharge an economic obligation, nor does it transfer property. Rather, the receipt "memorializes a transaction that has previously occurred, a fait accompli."[10] It is simply evidence that a transaction has already occurred. Although the receipt is evidence that an item has been purchased, it is the purchase, not the receipt, that gives the purchaser a right to the item. Likewise, even if a receipt is required by a particular store in order to obtain a refund under the store's return policy, it is the return policy, not the receipt, that creates an obligation in the store to issue a refund. And even then, the item itself must be returned; presentation of the receipt alone would not entitle a purchaser to a refund.

Before the adoption of the modern penal code, to be guilty of forgery, a person was required to "without lawful authority, and with intent to injure or defraud, [] make a false instrument in writing purporting to be the act of another, in such manner that the false instrument so made would (if the same were true) have created, increased, diminished, discharged or *defeated* any pecuniary

---

[9] TEX. PENAL CODE § 32.21(d) (emphasis added).

[10] *Shipp*, 292 S.W.3d at 275.

obligation, or would have transferred, or in any manner have affected any property whatever."[11]  In

a 1941 forgery case based upon this statute, this Court informally referred to a receipt as a

"commercial instrument."[12]  The authorities relied upon in that case can be traced to *Fonville v.

State*, an 1884 decision by our predecessor, the Court of Appeals.[13]  *Fonville* held that a receipt could

be the basis of a forgery prosecution because a receipt, if true, could defeat a lawsuit based upon a

failure to pay all that was owed.[14]  For example, if a defendant stole a bicycle from a store and forged

a receipt for it, the receipt, if it had been real, would have defeated a lawsuit by the store for the

value of the bicycle, since the receipt would have shown that the defendant had paid for it.

  With the advent of Texas's modern penal code, which was influenced by the Model Penal

Code, the forgery statute has been dramatically reworded, and its scope has been expanded beyond

documents that relate to pecuniary obligations or the transfer of property.[15]  Under both the Model

---

[11]  TEX. PENAL CODE art. 979 (1948) (emphasis added, empty brackets inserted in place of "shall" in the text); *see also* TEX. PENAL CODE art. 924 (1911) (identical text, except for the presence of a comma after "writing").

[12]   *Blake v. State*, 142 Tex. Crim. 518, 519, 155 S.W.2d 365, 365 (1941)

[13]  *See Blake*, 142 Tex. Crim. at 519, 155 S.W.2d at 365 (citing three cases, including *Martin v. State*, 85 Tex. Crim. 89, 209 S.W. 668 (1919)); *See Martin*, 85 Tex. Crim. at 90-91, 209 S.W. at 668-69 (discussing *Fonville v. State*, 17 Tex. Ct. App. 368 (1884)).

[14]  *Fonville*, 17 Tex. Ct. App. at 382 (Acting as an agent for Hamby, the defendant paid $1.35 to pick up a parcel, but then he charged Hamby $1.75 for the parcel, overcharging him by forty cents. "And for this amount, though small indeed, Hamby had a right of action against [the defendant]. Now suppose suit instituted," if the defendant had indeed paid $1.75, "as is stated in the receipt," then "certainly the pecuniary obligation of him to Hamby would have been defeated."); *see also Martin*, 85 Tex. Crim. at 90-91, 209 S.W. at 668-69 (quoting from *Fonville*).

[15]  *Compare* TEX. PENAL CODE § 32.21 *with* MODEL PENAL CODE § 224.1.  *See also* Seth S. Searcy III and James R. Patterson, *Practice Commentary*, TEX. PENAL CODE § 32.21, p. 171-72 (Vernon's 1989) (observing that the current forgery statute "consolidates a number of provisions of the old Penal Code covering forgery of different kinds of documents" and "extends the offense to

Code and the current Texas provision, forgery is punished as a misdemeanor unless the document forged falls within one of several specified categories.[16] In the Texas statute, subsection (d) prescribes a state-jail-felony punishment for documents purporting to involve economic obligations or the transfer of property, but, in one respect, the wording of the provision is narrower in scope than the previous forgery statute: Nothing in the current provision suggests that it is directed at documents that merely "defeat" an obligation, as opposed to creating or discharging one. Nor is there any suggestion in the current provision that it covers documents that merely "affect" property, as opposed to documents that actually transfer property. Indeed, subsection (d)'s language is narrower than its Model Penal Code counterpart, which encompasses a document "evidencing . . . or otherwise affecting legal relations."[17] If the Legislature had intended to punish as a state jail felony the forging of a document that defeats, evidences, or otherwise affects an economic obligation, property, or legal relations, it could have easily included language to that effect.[18]

---

nonmonetary and nonproperty injuries").

[16] TEX. PENAL CODE § 32.21(c); MODEL PENAL CODE § 224.1(2).

[17] MODEL PENAL CODE § 224.1(2).

[18] The Court criticizes the court of appeals for identifying the class of documents in subsection (d) as those that "relate to legal rights or relationships" on the ground that such a class is "so broad as to be largely meaningless." Court's op. at 10. The court of appeals's statement of the class is not as broad as the Court suggests. Although the court of appeals initially observed that the documents outlined in the statute all "relate to legal rights or relationships," it explained that the class of documents at issue are those that "either grant or cede a present or future benefit or right." *Shipp*, 292 S.W.3d at 275. My dissent formulates an even narrower class for subsection (d), but my dissent and the court of appeals's opinion both recognize that subsection (d)'s class does not include documents that merely *memorialize* or *evidence* a right, obligation, or transaction.

The Court asks, "How is a will or codicil like a check? How is a deed of trust or a mortgage like a credit or debit card?" Court's op. at 11. These documents are all alike in that the documents themselves have binding legal effect. Wills, codicils, and deeds of trust are documents that legally effectuate the transfer of property. A mortgage legally obligates a lender to advance the borrower

So, I would hold that a receipt is not a commercial instrument under subsection (d). A receipt certainly evidences—and may well defeat or otherwise affect—an economic obligation, but a receipt neither creates nor discharges such an obligation nor does a receipt transfer property. Because the evidence was insufficient to support appellant's conviction, I would proceed to address whether the judgment should be reformed to reflect a conviction for the lesser offense of misdemeanor forgery.

I respectfully dissent.

Filed: February 2, 2011
Publish

---

money and obligates the borrower to repay it. A credit card legally obligates the credit-card issuer to afford credit to the credit-card user to make purchases. A debit card legally obligates the debit-card issuer to make available, for purchases, funds from an account linked to the card. By contrast, though a receipt memorializes or evidences a transaction that has binding legal effect, the receipt itself has no binding legal effect.