IN THE COURT OF CRIMINAL APPEALS
OF TEXAS



NO. PD-1346-09




ALLEN RAY SHIPP, Appellant

v.

THE STATE OF TEXAS



ON STATE’S PETITION FOR DISCRETIONARY REVIEW
FROM THE SIXTH COURT OF APPEALS
FANNIN COUNTY



                      Meyers, J., filed a concurring opinion.

CONCURRING OPINION 
           I agree with the plurality that the evidence is legally sufficient to support the jury’s
verdict that the receipt was a “commercial instrument” under Section 32.21(d) of the
Texas Penal Code. However, I disagree with the path taken to reach that result. A plain
meaning for “commercial instrument” exists, so the plurality should not have looked
beyond the statutory language to consider legislative history.
           Section 32.21(d) provides a list of many types of instruments, all of which are
writings that provide for a right, privilege, value, or identification in property. At the end
of this list is the phrase “or other commercial instrument.” Tex. Penal Code Ann. §
32.21(d). The placement of the phrase and use of the word “other” indicates that the list
is not exclusive and the list extends to other unnamed items in the class of writings
termed “commercial instruments.” The Penal Code does not define the phrase
“commercial instrument,” so its meaning must be determined based on principles of
statutory construction. 
           When a statutory term is not defined, we attempt to give effect to its plain meaning
or common understanding. Ramos, 303 S.W.3d at 307; Boykin v. State, 818 S.W.2d 782,
785 (Tex. Crim. App. 1991). The term is generally construed in context as the rules of
grammar and common usage allow and utilizing the rules of statutory construction, unless
it has acquired a technical or specialized meaning. Tex. Gov’t Code Ann. § 311.011;
Boykin, 818 S.W.2d at 785 n.3. One canon of statutory construction that aids us in
determining plain meaning is the doctrine of ejusdem generis, which the court of appeals
employed: “in interpreting general words which follow an enumeration of particular or
specific things, the meaning of those general words should be confined to things of the
same kind.” Perez v. State, 11 S.W.3d 218, 221 (Tex. Crim. App. 2000) (en banc); see
Shipp v. State, 292 S.W.3d 267, 274-75 (Tex. App.—Texarkana 2009). Only when the
term is ambiguous or the plain meaning leads to an absurd result do we look to
extratextual factors, including legislative history, to ascertain the meaning. Boykin, 818
S.W.2d at 785-86. 
           When construing “commercial instrument,” the court of appeals did not have the
benefit of our decision in Ramos v. State, in which this Court defined the common usage
of the term “instrument” as it is used in a different section of the same felony forgery
statute. Ramos, 303 S.W.3d at 307-08. That case is useful to my present analysis.
           The appellant in Ramos was convicted under Section 32.21(e)(3)


 of felony forgery
of a government instrument after selling a forged Social Security card to an undercover
officer. In determining whether the Social Security card was indeed an “instrument,” we
first rejected the argument that the technical meaning of “instrument” was “negotiable
instrument” as found in the Texas Business and Commerce Code. That code is “by and
large, unrelated” to the Penal Code, and since the other items listed in Section 32.21(e)
are not limited to negotiable documents, we determined “that the Legislature intended to
punish as a third-degree felony the forgery of any ‘instrument’ issued by government,
regardless of whether that ‘instrument’ was negotiable.” Id. at 307. We then concluded
that “instrument” was a term in common usage and, relying on the Oxford English
Dictionary, defined it as “a formal legal document whereby a right is created or
confirmed, or a fact recorded; a formal writing of any kind, as an agreement, deed,
charter, or record drawn up and executed in technical form, so as to be of legal validity.” 
Id. This was broad enough to include a Social Security card.
           The term central to this case is “commercial instrument,” rather than “instrument,”
but I do not believe the adjective “commercial” transforms the meaning of “instrument.”


 
Although “instrument” as construed in Ramos is located in a different subsection than
“commercial instrument,” it is logical to assume that the Legislature would have intended
the term to have the same meaning within the same subchapter of the Penal Code.


 If the
Legislature intended “instrument” to convey one meaning in Section 32.21(d) and another
in Section 32.21(e), it would have used two different words to distinguish meanings.
           Instead of transforming the meaning of “instrument,” “commercial” narrows it to
those instruments used in commerce, and the modifier’s significance is also determined
according to a plain meaning analysis. The Oxford English Dictionary defines
“commerce” as “to carry on trade.” 1 Oxford English Dictionary 678 (compact ed.
1971). Similarly, Black’s Law Dictionary identifies “commerce” as “[t]he exchange of
goods and services,” and several terms modified by the adjective “commercial” are
defined as relating to the sale or exchange of goods. Black’s Law Dictionary 214-15
(abr. 7th ed. 2000). Accordingly, “commercial” limits the instruments referred to in
Section 32.21(d) to those involved in the buying, selling, or transfer of goods, services, or
other benefit. 
           This definition is supported by Section 32.21(d) itself. The general catch-all at the
end of the precise list reads “or other commercial instrument.” The “other” is of
particular significance because it presumes that the specific items listed previously are
types of “commercial instruments,” and thus, they should all fall within the phrase’s
definition. Indeed, each item can be classified within my definition.
           The dissent would define “other commercial instrument” as documents that create
or discharge an economic obligation or that transfer property, but that definition is too
narrow. The specific items listed in Section 32.21(d) can reach beyond the scope of the
dissent’s characterization. For example, wills and codicils need not be limited to
economic obligations or property transfers. They often cover other issues such as the
custody of a child, the guardianship of elders, and medical directives. 
           The receipt here fits within the definition of instrument provided for in Ramos (“a
formal legal document whereby a right is created or confirmed”) as modified by
“commercial.” More than a mere “memorialization of a past transaction” without any
future benefit as the court of appeals suggests, the receipt evidences a contract for the sale
of goods, a legal relationship between the buyer and seller.


 It is a record of a commercial
transaction that confirms the right to possess the items purchased (including the ability to
transport them).


 Consequently, I disagree with the court of appeals. Under the facts of
this case and given the determination by the jury, it is reasonable to characterize the
receipt as a “commercial instrument” under Section 32.21(d). 
           My conclusion is supported by Runnels v. State, No. 14-03-00657-CR, 2005 Tex.
App. LEXIS 1381 (Tex. App.—Houston [14th Dist.] Feb. 15, 2005, pet. ref’d) (mem. op.,
not designated for publication) and Graham v. State, No. 14-97-00840-CR, 1999 Tex.
App. LEXIS 3564 (Tex. App.—Houston [14th Dist.] May 13, 1999, pet. ref’d) (not
designated for publication), which I consider to be more pertinent to this analysis than did
the court of appeals. The court of appeals distinguished the football tickets in Runnels
from the receipt because the football tickets, unlike the receipt, had value in that “they
permitted the bearer to gain admittance to the stadium and be entitled to sit in a
designated seat.” Shipp, 292 S.W.3d at 273. Actually, the receipt serves a similar
function to the football tickets because, if authentic, it would have given Appellant the
right to possess the items and, thus, entitled him to leave the store with the merchandise. 
Similarly, I do not see the credit slip in Graham as completely distinguishable from the
receipt. Although the receipt may not be “as good as money” because it cannot be
exchanged for reimbursement without the merchandise also being returned, both the
credit slip and the receipt, if authentic, evidence a commercial relationship between the
buyer and seller that continues to have significance and is honored upon the document’s
presentation.
           Accordingly, because the term “commercial instrument” is not ambiguous and its
plain meaning does not lead to absurd results, it is unnecessary to consult the statute’s
legislative history or other extratextual sources. The plurality was incorrect for doing so.



           I also believe that the plurality opinion is deficient for not addressing the portion of
the court of appeals’s opinion referring to the jury charge. Even if, as the plurality
suggests, the court of appeals “gratuitously opined” about the definition of “commercial
instrument” provided by the trial court in the charge, the plurality opinion should have
addressed that portion of the lower court’s opinion. I hope that my discussion of such is
instructive to appellate courts in the future.
           In assessing jury charge errors, we first must determine whether error exists. If
error is present, we then evaluate whether the error caused harm. Hutch v. State, 922
S.W.2d 166, 170-71 (Tex. Crim. App. 1996) (citing Almanza v. State, 686 S.W.2d 157
(Tex. Crim. App. 1985) (op. on reh’g)). The standard of review for errors in the jury
charge depends upon whether the error was preserved. Error preserved by objection will
require reversal if there is any harm, but if not preserved, egregious harm is required. Id.
at 171. I disagree with the court of appeals’s holding that the jury charge was erroneous.
           A proper jury charge guides the jury in answering the questions presented. Id. at
170. This requires the charge to define any legal term or phrase that the jury needs to
properly resolve the issues. No special instructions are necessarily required for terms or
phrases that have neither been statutorily defined nor acquired a technical meaning.
Medford v. State, 13 S.W.3d 769, 772 (Tex. Crim. App. 2000). But simply because a trial
court is not required to give an instruction regarding a term, that does not mean the court
errs by doing so. Lockhart v. State, 1 S.W.2d 894, 895 (Tex. Crim. App. 1927) (“In our
opinion it is not necessary to give any definition of the terms used in the statute, but, one
having been attempted, we think it not erroneous.”).


 The trial court has broad discretion
in submitting proper definitions and explanatory phrases to aid the jury. Macias v. State,
959 S.W.2d 332, 336 (Tex. App.—Houston [14th Dist.] 1997, pet. ref’d). Nonetheless,
because the jury is the ultimate trier of fact, the charge may not advise the jury on the
specific application of the facts to the law such that it comments on the weight of the
evidence. Watts v. State, 99 S.W.3d 604, 609-13 (Tex. Crim. App. 2003). 
           Because “commercial instrument” has neither a statutory definition nor a technical
meaning, the trial court had broad discretion when defining the term in the jury charge.
The jury charge in this case defined “commercial instrument” as “anything reduced to
writing which is executed or delivered as evidence of an act or agreement, and said
writing relates to or is connected with trade, and traffic, or commerce in general, or is
occupied with business and commerce.” Shipp, 292 S.W.3d at 270. While the definition
is broad, it comports with the plain meaning discussed previously. In addition, the charge
is neutral; that is, it does not indicate how the facts should be applied to the phrase
defined, and thus, it does not comprise a comment on the weight of the evidence. 
           Therefore, even though the trial court was not obligated to give a definition of
“commercial instrument,” it did not abuse its discretion in presenting this definition in its
charge to the jury. Nor was the definition inaccurate, misleading, or a comment on the
weight of the evidence. I also find that the jury’s determination of guilt under Section
32.21(d) is reasonable, given the facts of this case and the definition of “commercial
instrument” provided in the court’s charge. I neither claim this to be the proper definition
of “commercial instrument” nor encourage courts to use this definition in the future, but
in this particular case, it did not result in trial error. 
           For these reasons, I respectfully concur. 
                                                                                                   Meyers, J.
Filed: February 2, 2011
Publish